Please publish the cases for argument. The following cases are scheduled for argument this morning. Tuesday, April 14, case number 24-3373 and case 25-1754, Rastico Lacina v. Todd Blanche. Case number 2, case number 25-2269 and 25-2659, Oliver & Co. et al. v. Visionary Fund Manager, Oliver & Co. et al. v. Visionary, PEGP-1. The third case for argument, case 25-1946 from Eastern Missouri, Express-Grips et al. v. United States. And the last case for argument, 24-3541 from Eastern Missouri, United States v. Deontay Overall. First case is Rastico Lacina v. Todd Blanche. Thank you, Mr. Smith. It please the court. Counsel, this case is about who makes the law. It's Mr. Lacina's position that Congress makes the law. And the Board of Immigration Appeals needs to use the common tools of statutory interpretation when it makes its decisions and administers the statute that Congress delegated its authority to make decisions on. Well, they function under the authority of the Attorney General. That's correct. The Attorney General is given broad powers to delegate to them. Yes, and the Attorney General has- You basically ignore that. No, the Attorney General has delegated the authority to make these decisions to the Board of the Immigration Appeals. So it's a complete delegation of all those authority. And I think the Eighth Circuit case law has stated that in these cases, they have delegated all that authority. It really comes to kind of two issues in this case. One is that the criminal conviction that made Mr. Lacina removable from the United States is not a crime involving moral turpitude. I'm having trouble hearing. You've got to- Oh, I'm sorry, Your Honor. Speak more slowly and into the mic or at the audience. I apologize, Your Honor. Mr. Lacina's conviction for possession of, sorry, receipt of stolen property does not make him removable because it is not a crime involving moral turpitude. And Mr. Lacina's motion- That's the issue before us. Were you just stating the conclusion or stating what the issue is? I was stating first what one of the issues was, and then I was going to state the other issue, Your Honor. The other issue is that Mr. Lacina's motion to reopen should have been granted, but was denied because of the post-departure bar, which is not supported by the text of the Immigration and Nationality Act. If we decide the case in your favor based on the latter issue, would it be appropriate? I'm just trying to figure out as a preliminary question what we should do. Would we send the whole thing back down to the board and not decide the first issue in your view? I think because the convictions don't exist anymore, I think that it would make the most sense to remand the motion to reopen back to the board. Because we're kind of deciding sort of an academic question, because the convictions really don't exist. You got those overturned. They're all in the motion to reopen. It doesn't make a lot of sense to me to decide that issue if you're going to decide one issue. And if you're going to decide one issue, I think it should be the issue on the motion to reopen. So it's either- You just mumbled the last five words, and they were the important ones. I'm sorry, Your Honor. You should remand the motion to reopen. I think that's the issue that the court should decide on. Would we remand on- I mean, would we sort of- I mean, this is a procedural question, but would we remand on both, essentially, saying we're reopening, you guys go figure it out, rather than leaving the other one potentially open? Because there's two separate case numbers. Right. I think you remand on both and say, hey, decide the issue now about whether he's removable, given what we know of the record. Now, the Immigration and Nationality Act says that an alien may file a motion to reopen. I don't understand why we'd remand the CIMP. I think that's- To the extent it's an issue of law, it's before us. Yes, but in some sense, that hasn't really been- I mean, the convictions don't exist anymore. And so, we're talking about removability based off convictions that have been overturned, which would file in the motion to reopen. Is that the issue? I thought- That wasn't in your two issues. The issue is whether it's the CIMP, right? The removing stolen property. Right. So, we filed the first motion- we filed the first petition because of the CIMT issue. And then, we later filed a motion to reopen because those convictions had been overturned. And so, I haven't been in this position procedurally, but I'm saying- I don't under- You've just snuck something in the middle there. I don't understand why we can't decide the CIMP underlying issue. You can't decide that issue. I'm not- What reason is there not to? I think the reason not to is the conviction doesn't exist as a practical matter. And so, it wouldn't make a ton of sense to decide that issue for a conviction that has been overturned. If we disagree with your- as I do with your statutory analysis, then the fact whether they exist or not doesn't matter. At the time of the offense, it was a CIMP. Then, you'd have to decide the issue if you decided that the analysis on the post-departure bar was incorrect. Then, I think you'd have to decide that issue. Well, the- When are we remanding then? The Bureau of Immigration Appeals is not weighed in on the crime involving moral turpitude issue, right? They decided the crime involving moral turpitude issue when they- from the appeal of the Board of Immigration Appeals. We filed a petition for review of that issue. And so that- and there, they decided, yes, it was a crime involving moral turpitude. And so, therefore, Mr. Luxina was removable from the United States. We filed a petition for review of that decision. Later, that conviction was overturned, which is why we filed the motion to reopen. Mr. Luxina had been deported. I guess- I guess really what I meant was that the BIA is not weighed in on the effect of those convictions being set aside. That's correct. And that's why I think a remand would be appropriate, given the motion to reopen arguments that we're making. You know, to follow up on this, I mean, it's sort of an interesting question, because at the time the Board decided it, right, those convictions existed. So that's kind of what we're reviewing in one petition for review. And on the other hand, the other petition for review is assuming exactly the opposite, which is this- I mean, it's now a fact, but the convictions no longer exist. So it sort of leads me to the question- to the when question. Which one matters? Does it matter that the conviction existed and the Board's decision may have been right in the first instance on the crime of moral turpitude? Or does it matter that later it was vacated by the state? It's sort of an interesting when question. Right. It's- I've never been in this position before, and I couldn't find many cases where something like this had happened. I mean, if I'm right on the CIMT issue, then nothing really matters anyway. If I'm wrong on the CIMT issue- Well, what's being right on- I have no idea. When you say if I'm right on the CIMT issue, I have no idea what issue you're talking about. If I'm right that his prior conviction did not make him removable because it's not a crime involving moral turpitude, then the final order of removal never should have been entered in the first place. Okay. That's what I'm saying. Let's just- that's easy to decide, frankly, I think. But, you know, if you're going to rule against me on that issue, then I think you have to decide the motion to reopen question. Right. And I think that statutorily, the motions reopens are not- Congress clearly did not make any geographical limitation on who can file a motion to reopen. Just- I want to go back to my wind question. When do you think the appropriate time? Is it enough that at one point he had a conviction that was perhaps a crime of moral turpitude and that it's too bad, so sad that it got vacated? No, I think the fact that it got vacated- I mean, it's an abusive discretion to say that this ground of removability, you know, it came up within the appropriate period of time when he filed the appropriate motion to reopen. The fact- I mean, it would have been an error not to grant this. And I think it is an error not to grant this, even if the post-departure bar didn't exist. Wait, what? If the post-departure bar did not exist- It didn't, all right, but it exists. Right. It would be- And if it's enforceable, you lose that issue. And I don't think it is enforceable. I mean, if you've decided that it's enforceable, that's within- if it's within the statutory scheme. If we take the position of Congress and the Attorney General and reject the position of the other circuits, you lose that issue. Right. But I think that Congress is on my side in this issue. I mean- I know you do. I think the statute is completely silent as you would read it. And the red as a whole looks- points in the other direction. Well, it's silent on the issue of any geographical limitation. It doesn't say explicitly, oh, you can file this if you're outside of the United States. I thought you argued plain language in your brief. Plain meaning. The- I'm continuing to argue plain meaning, Your Honor. An alien is any person- It's silent. How can it have a plain meaning if it's silent? Well, it doesn't say explicitly, you can file this if you're outside the United States. But if we look at the term alien, that means any non-citizen of the United States. There are non-citizens of the United States in the United States, and there are non-citizens of the United States outside of the United States. But if we look just a little further on in the statute, when we talk about the domestic violence exception, they did speak specifically there. And so, just going back- What statute are we talking about? 1961 or much later? No, it's still within the same subsection. But there's a specific domestic- Wait, wait, wait. Yeah, but the environment was much different. I'm sorry, you're talking about- Well, I mean, IRA changed the world. Oh. And then we had an amendment after that. IRA, IRA did not change the 1961 world, in my view. I think IRA, IRA specifically added the statutory motion to reopen and then had a specific provision for motions to reopen on the domestic violence exception. And that specific provision on the motions to reopen for domestic violence exception does have a physical presence requirement. So that physical presence requirement that they added to that specific subsection means that if they wanted to have added a physical presence requirement earlier, they could have. They did not. I think the silence on the issue- You can read silence- It's silent about all number of things. But reading silence as saying that this is what we're saying, this is what we're doing, you need to read something special into that silence, doesn't comport with a plain meaning interpretation of an alien may file a motion to reopen. Now, one argument against that is the idea of legislative acquiescence. One of the problems with the change in administrative law- I mean, one of the challenges, not a problem. One of the challenges in the change in administrative law, particularly after Loper-Bright, is we have all these years when Chevron played a role. And so you could argue that the legislature knew that there was this regulation sitting out there that required physical presence. And if I'm a legislator, I'm like, you know, immigration law is really quite controversial. You know, and so I'm just going to let the agency do it. We don't need to pass a law with a physical presence requirement because it's already required by the regulation. Yeah, and I don't think that that, you know, again, this is reading something into inaction. It's reading something into silence. I don't think that looking at a plain meaning of the statute- Silence. The world out there had the domestic bar in it for 30 plus years. It was not a silent world. Well, Congress was silent on the issue when they passed the law. They didn't say, well, we're going to add a physical presence. They didn't have a motion to reopen statute before. And as soon as they did file a motion to have a motion to reopen statute, they did not include a post-departure bar. I'm going to- Well, don't say did not consider. You have no idea what they considered. Well, they didn't pass it as part of the statutory language. If there are any further questions, I'm going to reserve the rest of my time for rebuttal. Mr. Goldman? Good morning, Your Honor. May it please the Court. Dan Goldman on behalf of the Attorney General. The government asks this Court to uphold the two agency decisions and deny the consolidated petition for review. With regard to the first case- You're going to have to speak up. I apologize, Your Honor. With regard to the first case, the crime involving moral turpitude case, the Board properly found that the crime here under California Code 496a, receiving stolen property, was a CIMT. That was a correct finding. Based on the knowledge requirement, the knowledge requirement being that Mr. Loxena, at the time he committed the crime, knew that the property was stolen. That's the key for a CIMT, receipt of stolen property, crime. It's different than a theft crime. Theft is a different, requires different conduct, different state of mind, and different actions. For receipt of stolen property-  Would you have us follow Solis Flores? 100 percent, Your Honor. And follow it, I can file a 28-J letter, but Solis Flores was recently decided after remand by the Supreme Court, the November 2025 decision. The Solis Flores decision laid it out in the government's mind perfectly. It emphasized the knowledge requirement, knowing that the property was stolen. It also discussed the difference between theft and receipt of stolen property. In addition, Solis Flores specifically agreed with what we argued in our brief, that the Ninth Circuit got it wrong in Custio Cruz. I want to ask you the same question that I asked opposing counsel. Suppose we rule against the government on the motion to reopen. Because it feels honestly like a little bit of an advisory opinion or a hypothetical question. Because, as opposing counsel says, the conviction no longer exists. It's just not there. It's been vacated. I forget the reason, but basically there was some sort of constitutional or whatever violation. And so, if we reopen, do we decide the crime of order it reopened with, you know, remand with instructions to reopen? Do we decide the crime of moral turpitude question? I think the easiest answer to Your Honor's question is, the way to avoid deciding the CIMT question is if Mr. Loxena withdraws that petition for review. He hasn't done that. He put the issue before this court. The government believes the court does need to address that issue, because what it goes to is whether there was a valid removal order at the time he was removed. It's a precursor to petition for review number two. So, the government believes that, number one, our arguments are correct with regard to the CIMT, but number two, yes. I'm not sure you're right about the argument you just made. I think that Mr. Loxena had to file a petition review to preserve it. But I think what he is saying is, I did that out of, you know, an abundance of caution, because you actually have a choice, court. You can either reopen it, send it back down to the board, have them decide what to do with these vacated convictions, or you could just say it was no crime of moral turpitude in the beginning. We disagree, I think, in the details, Your Honor. In order to get to the second petition for review, there need to be a few things. One, a valid conviction. Two, a valid removal order. And three, no impediment to removal. As it happened in real time, there was a conviction. There was a valid removal order. There was no stay of removal. Therefore, removal, when it took place in November of 2024, was proper. Your Honor's question, I think Petitioner's argument is sort of, was this all overcome by events? We don't believe it was, because in order to get to the second question, in order to get to the question of the motion to reopen, there first has to be a valid removal order. Because if he was not properly removed, then he's a green card holder. He could potentially come back. So it's a precursor. But isn't it, doesn't it become, I mean, I guess my problem is Article III, okay? So does it become a hypothetical question, because that no longer exists? We, it'd be purely sort of like we're giving advice to the board that, yeah, this is actually a crime of moral turpitude. I think, I understand Your Honor's question. I get your argument, too, the other way. And I think it, I think if this, I think the easiest way to decide that is to find that this is a CIMT, the receiving stolen property. And then the court can make its decision with regard to the departure bar. A couple things to note there. If the court were to disagree with our arguments with regard to the CIMT, as we argued in our brief, the appropriate course would be to remand. Because what the board did not do in this case, sorry, in the first case, was to decide whether his drug possession conviction was a removable drug offense. They chose only to decide on the CIMT question. So if he's, if this court finds that it, that the receiving stolen property crime is not a CIMT, then remand would be appropriate for the board in that instance to decide, rather, in the first instance, whether the drug conviction, as it existed at the time he was removed, was a deportable offense. Therefore, was the removal order proper? Perhaps that gets to your, the flow chart gets complicated, to be honest, Your Honor. But your reference to a green card holder who can come back, that's the change that IRA did make. I mean, the practice before that was, if you leave the country with your appeal pending, you're gone. Correct. And as a result, too many, too many, too many courts were issuing stays of removal. And though, so Congress, the band-aid was to eliminate the you can't come back. If your appeal is pending and you are removed or leave, or leave the country and then win your appeal.  You can come back. The stay motion. You have to get in line and wherever. Right. The stay motion became, in essence, the whole ballgame. Because if a petition for review was filed under pre-IRA law, if the stay was denied, if the individual was removed, the petition for review was mooted out. That changed.  That's the world in which we live. The first case, though, we believe that this is a CIMT. Again, if the court disagrees with that, we believe remand is appropriate for the board to address, in the first instance, whether his drug conviction was a removable drug offense. With regard to the second petition for review, a couple things that I would note, Your Honor, there was a lot of discussion earlier about convictions being overturned. The convictions were vacated, but Mr. Loxena still has a criminal record. And I think that's important to note. What his counsel argued today was this idea that we had this strong motion to reopen. He would have been found not removable. That's a decision that, if the court disagrees with the government on the departure bar, that's a decision that the board would have to make in the first instance. Can I ask a follow-up to Judge Lowe? It's a slightly different question, but it does follow up, which is that he can come back. So, we don't have any binding case law, really, on the departure bar. A lot of other circuits have decided against the government and dealt with it. So, my assumption all these years, seven and a half years on the court, was if you file a stay of removal, there's not such a need to grant it because they can continue litigating the petition for review from afar. And so, it's kind of a be careful what the government wishes or wants because that may prevent judges from denying a stay of removal if, in fact, they have to litigate on the soil of the United States and they have a strong case. And so, we might not allow deportation in those circumstances. And so, I'm trying to figure out, why should I not be concerned about this for people who have valid, you know, good claims that we need to adjudicate? Why wouldn't we just automatically, under your view, why wouldn't we just automatically grant a stay of removal? I think, Your Honor, that that would be on a case-by-case basis. Under Nken, this court evaluates whether the alien has a likelihood of success on the merits. And if the motions panel or the merits panel in evaluating a stay motion believes that there is a likelihood of success for the alien, the court would grant a stay of removal. I understand Your Honor's question. There's a little bit of a tension there. Some of the district court decisions that raised the departure bar addressed that issue and said, because the arguments were made in district court, well, I might not be able to file a motion to reopen. I'm in the Eighth Circuit. They're going to apply the departure bar. And what the district courts all said was, yes, the departure bar is still good law. That's why, with regard to the second petition for review, Your Honor, the government believes that the board did not abuse its discretion. It followed its binding regulation, its binding precedent in Armendariz. And it emphasizes the importance of finality, particularly in the immigration context. And in this case in particular, this is a recidivist criminal, two convictions, back in 2009. He gets a second bite at the apple. Back in 2009, he goes into immigration court. He's granted cancellation of removal. He gets to stay. What happens after that? 2013, another conviction. 2015, another conviction. So two separate situations. He then gets put back into removal proceedings. So he's had his second bite at the apple. That underlies why the government believes the departure bar is necessary, and that this case emphasizes why the departure bar is necessary. Just to, you know, on the departure bar, I'll tell you what gives me pause on the government's argument. It is the neighboring provision, which actually requires physical presence. So it says, it gives victims of domestic abuse longer than 90 days to file, quote, if they are physically present in the United States at the time of filing the motion. So we have another nearby provision that expressly, it's unclear about what happens within the first 90 days, but after 90 days, if they are physically present in the United States, they can continue to litigate the claim. So clearly, Congress knew how to make a physical presence requirement, but they didn't do it here. And so I wonder, just as a matter, after Loper-Bright, as a matter of plain old statutory interpretation, the absence of that same thing in this particular provision means that it must have meant something different.  As we discussed in a brief, Your Honor, and I think we'd urge the Court to follow what the Board said in Armendariz, that the domestic violence situation is different. Congress said for the domestic violence victims, physical presence is an element. Didn't say that. And I think what the legislative history tells us is what Congress was doing when it passed IRA-IRA was to address the problem that it saw of multiple motions to reopen, late motions to reopen. The reg was already there with regard to number and filing deadline. Congress, you need to put something into the law that says we don't want to see 17 motions to reopen and we don't want to see them 17 years later. So that's exactly what Congress did. They knew the reg was there. The law didn't have to say no more departure bar because Congress knew the departure bar was still on the regs and still good. And that requires, I mean, the issue there is that requires us to interpret legislative inaction, which is really a form of legislative history in essence. So we have to find that the environment or the legislative history was so clear that Congress maybe would have acted had the regulation not been there. Yes, Your Honor. I want to circle back a little bit on the motion to reopen again to emphasize that if the court disagrees with the government on the departure bar question, the government would ask the court to remand this case on the second petition for review of the motion to reopen so that the board could evaluate in the first instance the effect of the 1473 vacator reduction of the charges. And as this court has done in other cases, would highlight Andre Zamora, one of this court's cases, 814 F3rd 945. In that case, the court looked at an Iowa rehabilitative statute and looked at what the board found. And the board found that even though the convictions had been reduced, even though the sentence in that case had been reduced to the point that the convictions were no longer deportable, the board had to evaluate in the first instance whether these were still valid convictions for immigration purposes. And there are some similarities between this case and Andre Zamora. As this court noted in Andre Zamora, there was an inference to be drawn that Mr. Andre Zamora's convictions were changed for immigration purposes. Why? Because they happened close in time to removal, same as in this case, and the effect of the convictions, getting him just under the limit so that he might not be deportable. Sounds very similar to this case. And again, Your Honor, it was said earlier, I want to just emphasize one last time, he still has a criminal record. He pled those two charges, receiving stolen property and possession of methamphetamine, down to public nuisance charges. It sure sounds like that was done for immigration purposes. For all of those reasons, Your Honor, the government asked this court to uphold the agency decisions and deny the petitions for review. Thank you. Would you put the time on for the court, please? It's working on my end. Pardon? It's working over here. Let me restart it. I can't hear you, but we can't see that. Okay. We always can see. Let me restart it real quick. Pardon? Let me restart it real quick.  Well, let's finish, let's finish your rebuttal. Okay. Next case. Your Honor, I don't have the time. 2.14. Okay. Sorry, you'll have to tell me when I'm done. Ira, Ira. I don't have a clock. Oh, man. I'll bang the gavel. Okay. There you go. Ira, Ira, we know the legislative intent was to increase the speed and increase the accuracy of removal. Proceedings. So it's entirely within congressional intent to increase big deportations. People aren't staying around. They're not sticking around in the United States after they've been ordered removed. They're being deported. But they want to increase the accuracy of those removal proceedings by still allowing them to file motions to reopen. The departure bar doesn't promote finality. What promotes finality is the numerical limitation. You get to file one motion to reopen. And the time limitation, you have to file that within 90 days. Nothing about the departure bar prevents multiple motions to reopen or frivolous motions to reopen. As it goes to my client's criminal record, the record in this case is that he was not advised under Padilla properly. And so those convictions were overturned. Under what?  Padilla v. Kentucky. He wasn't given immigration advice about those. And so those were overturned. He entered new pleas. Now, wait a minute. His criminal convictions required what? The immigration advice under the United States Supreme Court case Padilla v. Kentucky. But that was the issue with his convictions. And that's why they were overturned. So it was an ineffective assistance of counsel issue. You know what? I think the government hints that it does look like this. That maybe the state of, if it was a California, was playing games. That maybe this, because putting it down from like serious drug crimes to public nuisance. I mean, that is a pretty big gap there. And even if you got ineffective assistance, that would only vacate the plea. So what should we do with the government's assertion that this is California playing games? Almost like a sanctuary state type of thing. The government probably should have briefed that issue if they wanted to make it. I don't think it's before this court. Everything about, should I finish here? Yeah, I mean, if that was the decision that the Board of Immigration Appeals was going to make, then that would be the decision they're defending. But they only defended on the post-departure bar. Thank you, Your Honor. Thank you, counsel. Case has complex issues. It's been well briefed, healthfully argued.